UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ANTONIO TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-11-18 |
| | § | |
| EVANSTON INSURANCE COMPANY, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING DEFENDANT EVANSTON'S MOTION TO DISMISS
AND GRANTING DEFENDANT CARRINGTON'S MOTION TO DISMISS**

**I.   Introduction**

Now before the Court are the Motions to Dismiss filed by Defendants Evanston Insurance Company and Carrington Mortgage Services, LLC d/b/a CMS Mortgage Services, LLC, respectively, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docs. 13, 17). Plaintiff Antonio Trevino originally filed suit in the 389th Judicial District Court, Hidalgo County, Texas, on September 21, 2010, and Defendants removed the action to federal court on January 21, 2011 on the uncontested grounds that the requisites of federal diversity jurisdiction are present. (Doc. 1; Doc. 1, Ex. E); *see* 28 U.S.C. §§ 1332(a), 1441(a), 1446. Plaintiff's Original Petition, the live pleading in the action, alleges that "Defendants" issued a policy insuring property owned by Plaintiff in Edinburg, Texas and that Plaintiff made a claim under the policy seeking coverage for roof and water damage sustained by the property as a result of Hurricane Dolly on July 23, 2008. (Doc. 1, Ex. E). Plaintiff brings causes of action against both Evanston and Carrington for breach of the insurance policy, violations of sections 541 and 542 of the Texas Insurance Code and of the Texas Deceptive

Trade Practices Act ("DTPA"), and breach of the duty of good faith and fair dealing, all arising out of Defendants' alleged mishandling of the insurance claim and unfair settlement practices. *Id.* Defendants now move to dismiss for lack of subject matter jurisdiction on the grounds that Plaintiff has no standing to sue under the policy, which is a force-placed (also known as lender-placed) policy issued by insurer Evanston to mortgage servicing company Carrington as the only named insured. (Docs. 13, 17). Plaintiff counters that he has standing to sue as a third-party beneficiary of the policy. (Docs. 18, 19). Upon review of Plaintiff's pleading, Defendants' motions, and the record, in light of relevant case law, the Court finds that the motions must be granted for the following reasons.

## II.  Standard of Review

Rule 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "[T]he issue of standing is one of subject matter jurisdiction," *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006), and in this diversity case the substantive law of Texas governing Plaintiff's causes of action determines whether he has standing to sue as a third-party beneficiary. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602-03 (5th Cir. 2000) (addressing standing inquiry in diversity case pursuant to Texas law governing third-party beneficiary status); *Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1456 (5th Cir. 1996) (district court in diversity case correctly held that it was bound to apply substantive law of Texas in determining whether plaintiff had third-party beneficiary status to sue under policy for Texas Insurance Code violations). A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on any one of

three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Ultimately, the court should grant the motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [him] to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n*, 143 F.3d at 1010).

### III. Defendants' Motions to Dismiss

Plaintiff's Original Petition erroneously references a policy that became effective after the date of loss, but Defendants do not dispute that another Evanston policy concerning Plaintiff's property was in place when the loss occurred. *See* (Doc. 1, Ex. E; Doc. 13, Ex. B; Doc. 17, Exs. 1-3). Evanston issued that policy, a "Standard Fire Insurance Policy" with a "Mortgage Guard Policy" endorsement (collectively, "the Policy"), to Carrington as the only named insured. (Doc. 13, Ex. B at 0001, 0005, 0010). The Policy language reflects and Plaintiff does not dispute that Carrington is the servicer of Plaintiff's mortgage and obtained the Policy to protect its interest in the event Plaintiff failed to maintain windstorm coverage on the mortgaged property, which in fact occurred. (Doc. 13, Ex. B).[1] The Policy covers property damage resulting from specific perils, including windstorm or hail. (Doc. 13, Ex B at 0023-0025, 0080-0081). Under the Policy, "[l]oss shall be adjusted with and made payable to the Named Insured unless another payee is specifically named." (Doc. 13, Ex. B at 0012).

Plaintiff does not contest that he is neither a named or additional insured under the Policy. (Docs. 18, 19). Therefore, he recognizes that whether he has standing to bring any of the

---

[1] The Policy provides automatic coverage to Carrington when it files a claim showing an absence of coverage on the property. (Doc. 13, Ex B at 0080-0081).

asserted causes of action turns on whether he is a third-party beneficiary of the contract between Evanston and Carrington. *Id.* In the context of insurance litigation arising from Hurricane Katrina, numerous district courts applying Louisiana law have declined to find that a borrower, or mortgagor, was a third-party beneficiary under a force-placed hazard insurance policy issued by the insurer to the lender, or mortgagee. *E.g.*, *Graphia v. Balboa Ins. Co.*, 517 F.Supp.2d 854, 857-58 (E.D.La. 2007); *Carrier v. Balboa Ins. Co.*, 2009 WL 666962, at *2-3 (W.D.La. Mar. 10, 2009); *Riley v. Sw. Bus. Corp.*, 2008 WL 4286631, at *3 (E.D.La. 2008). The district court in *Riley* explained:

> Under Louisiana law, "[t]he most basic requirement of a stipulation *pour autrui* [stipulation "for other persons"] is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third-party beneficiary cannot meet his burden of proof." *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006). In this case, the contracts do not "manifest a clear intention to benefit" Riley. *Id.* As with all forced placed policies, Midwest initiated coverage in order to protect its own security interest in the property, not to provide any sort of benefit for the mortgagor. Indeed, the very purpose of a forced placed policy is to cover the uninsured portion of the mortgagee's interest. Though Riley may incidentally benefit from the stopgap coverage, he was not an intended beneficiary and is thus not entitled to enforce the contract in court. *See id.* (holding that for a third party to be entitled to enforce a contractual benefit, the benefit must not be "a mere incident of the contract between the promisor and the promisee")….

*Riley*, 2008 WL 4286631 at * 3. Recently, the Fifth Circuit in an unpublished decision also concluded that the force-placed flood insurance policy at issue did not manifest a clear intent to benefit the borrowers as is required to show third-party beneficiary status under Louisiana law. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, at **4-6 (5th Cir. Oct. 13, 2010). Plaintiff attempts to distinguish the district court cases and *Williams* by claiming that although the Evanston Policy "is primarily for the benefit of Carrington," the Policy "also provides coverage for personal liability, medical pay to others, personal property loss, and loss of use coverage" which could only inure to the benefit of Plaintiff. (Doc. 19 (citing Doc. 13, Ex. B

at 0049, 0051, 0054, 0056)). Plaintiff points out that the plaintiffs in *Williams* attempted to make a similar argument—that the "temporary housing expense" section of the policy conferred third-party beneficiary status on them—and that the Fifth Circuit did not reach the merits of that argument because the plaintiffs had waived it by first raising it on appeal. (Docs. 18, 19); *see Williams*, 2010 WL 4009818, at \*\*3-4. Therefore, Plaintiff directs the Court instead to the Fifth Circuit's decision in *Palma*, *supra*, in which the court determined that the borrower was a third-party beneficiary under a "mortgage guarantee insurance policy" purchased by the mortgagee to protect it from a loss in the event the borrower defaulted on the loan. *Palma*, 79 F.3d at 1457-58. The policy provided that "[t]he Borrower shall not be liable to the Company [insurer] for any loss paid to the Insured [mortgagee] pursuant to this policy." *Id.* at 1457. The court determined that this language benefitted the borrower only and gave her third-party beneficiary standing to sue the insurer when, after receiving an assignment of the deficiency due on the note, the insurer attempted to collect the deficiency from the borrower without crediting to her those proceeds already paid to the mortgagee under the policy. *Id.* at 1457-58. Plaintiff characterizes the "personal liability," "medical pay to others," "personal property," and "loss of use" coverages provided by the "Special Broad Form Homeowners Coverage" endorsement to the Evanston Policy as clearly benefitting only Plaintiff and therefore akin to the provision in *Palma*. (Docs. 18, 19). However, Evanston counters that these coverages only become available when a mortgagee complies with the reporting provisions of the Mortgage Guard Policy, which require the mortgagee to notify Evanston of "any change of ownership or occupancy or increase of hazard," *i.e.*, foreclosure, and to pay additional risk premiums. (Doc. 13, Ex. B at 0016; *see also* Doc. 13, Ex. B at 0048-0072; Docs. 18, 19, 22). In Texas, much like in Louisiana, "a presumption exists that parties contracted for themselves unless it 'clearly appears' that they

intended a third party to benefit from the contract." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp.*, 995 S.W.2d at 652). Here, the Policy language unambiguously manifests the intent to provide hazard coverage to Carrington to the extent of its interest in the property, and any benefit conferred to Plaintiff as a result is incidental. *See Gilbreath v. White*, 903 S.W.2d 851, 854 (Tex.App.-Texarkana 1995, no writ) (mortgagee has insurable interest in mortgaged property that is "entirely separate and distinct" from that of mortgagor to the extent of the debts secured). Plaintiff has pointed to no provision that makes clearly apparent the contracting parties' intent to confer a direct benefit on Plaintiff. Therefore, Plaintiff is not a third-party beneficiary under the Policy and has no standing to pursue his claims.

## IV. Conclusion

For the foregoing reasons, the Court finds that Plaintiff lacks standing to assert all of the causes of action in this suit. Accordingly, the Court hereby **ORDERS** that Defendants Evanston's and Carrington's respective Motions to Dismiss for lack of subject matter jurisdiction are hereby **GRANTED** and all claims against Defendants are hereby **DISMISSED**.

SO ORDERED this 12th day of July, 2011, at McAllen, Texas.

_____
Randy Crane
United States District Judge